# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ALBERTA CAROL GORTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 09-CV-328-PJC |
| | ) |
| MICHAEL J. ASTRUE, Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Claimant, Alberta Carol Gorton ("Gorton"), pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 401 *et seq*. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this order will be directly to the Tenth Circuit Court of Appeals. Gorton appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Gorton was not disabled. For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision.

### Claimant's Background

At the time of the hearing before the ALJ on May 19, 2008, Gorton was 53 years old. (R. 21). She obtained a GED. *Id*. Gorton testified that she had been pursuing online classwork toward a bachelor's degree in criminal justice with the University of Phoenix since July 2006. (R. 21-22). Her goal was to graduate in March 2010. (R. 33).

Gorton testified that her physical problems included constant low back pain. (R. 24). The

pain went down her legs. *Id.* She had daily swelling in her lower legs. (R. 26-27). To get relief, she would sit down and prop up her feet for ten minutes at a time throughout the day. (R. 27-28). She testified that she had "bad knees" and that she had been told not to squat, kneel, or lift more than 5 pounds. (R. 28). She could probably sit for a couple of hours before needing to get up and move around. (R. 37). She could stand for about five minutes before needing to sit down. *Id.* She could walk about a block before she would need to stop. (R. 37-38).

She experienced numbness and sometimes swelling in her arms, and that affected her ability to grip and pick up items. (R. 25-26). She had asthma that would be worse when she was exposed to environments with perfume or other allergens, and she took medication and used nebulizers and inhalers on occasion. (R. 28-30).

Gorton testified regarding her depression and feelings of worthlessness. (R. 30). She sometimes had thoughts of suicide, with the last time being the February before the hearing. *Id.* Her doctor prescribed Cymbalta after that time, and it caused a side effect of dizziness. (R. 36). Gorton said she had been a victim of family abuse, and she had anxiety attacks if she was around a lot of people she didn't know. (R. 31). She tended to stay in her bedroom all day and isolate herself. (R. 31-32). The last time she had a full blown panic attack was in 2006 with her manager. (R. 32). She had problems with ADHD and lack of concentration. *Id.* She could still pursue her school work, because she would set her work aside if she was having difficulty with concentration. (R. 32-33).

She did not sleep deeply, and she was up every hour or two. (R. 38). She believed this was due to fear of nightmares, and she frequently had vivid nightmares. (R. 38-39).

She would like to try to return to the workforce in the future, and she had discussed this with her psychologist, who thought it was possible. (R. 33-34). She did not feel able to return to work

at the time of the hearing. (R. 34). She did grocery shopping, she mowed the lawn, and she cared for her pets. (R. 35-36).

Gorton saw Richard D. Scott, M.D. at Warren Clinic in 2004, 2005, and 2006. (R. 143-61, 223-25). On July 20, 2004, Gorton was seen for eye pain. (R. 154-55). It appears that at an annual examination on August 11, 2004, Gorton was treated for various conditions, including fatigue. (R. 152-53). On August 24, 2004, it appears that Gorton was treated for elevated lipids. (R. 150-51). On November 8, 2004, the hand-written notes on the pre-printed form are not completely clear but appear to state that Gorton was treated for pleuritis and a cough. (R. 144-45). On March 2, 2005, it appears that Gorton was seen as a follow up on her cholesterol medication. (R. 158-59). She was seen again on August 15, 2005 for an annual examination. (R. 156-57). Hand-written notes from March 7, 2006, are not clear as to the reason for Gorton's visit. (R. 160-61).

Medical records reflect that Gorton attended weekly psychotherapy sessions at Laureate Outpatient Services in 1999, 2000, and 2001. (R. 184-98, 204-22). It appears that the principal diagnosis was depression, and Gorton discussed various problems with her provider. *Id.* For example, in one session, she discussed sleep disturbance, low energy, obsessing, and impaired concentration. (R. 218). A Diagnostic Assessment & Master Treatment Plan dated March 6, 2000, listed Gorton's Axis I[1] diagnosis as adjustment disorder with depressed mood. (R. 203). On Axis II it was noted that Gorton displayed traits of obsessive-compulsive disorder, and her current global assessment of functioning ("GAF") was assessed as 60, with her highest past year GAF listed as 75. *Id.* There were also medication management notes during the 1999-2001 time frame. (R. 199-202).

---

[1]The multiaxial system "facilitates comprehensive and systematic evaluation." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 27 (Text Revision 4th ed. 2000).

It then appears that there was a gap in treatment, with medication management again being provided in 2005, 2006, and 2007. (R. 169-70, 175-83, 235-38, 272).

On April 7, 2006, Jimmie McAdams, D.O., with Laureate, wrote a "To Whom It May Concern" letter stating that he requested that Gorton be off work from April 7 through May 8, 2006, "[d]ue to an exacerbation of depression and anxiety." (R. 163). A second letter dated May 2, 2006 stated that Gorton could return to work on May 8, 2006 with no restrictions. (R. 162).

It appears that Gorton continued to see Dr. McAdams in 2006, but unfortunately the treatment notes are hand-written and difficult to read. (R. 235-38). Apparently at this time, perhaps October 2006, Dr. McAdams completed a Mental Status Form, but again the handwriting is difficult to read. (R. 234). It appears that Dr. McAdams' comments were that Gorton was alert and oriented, with a blunted affect and good grooming. *Id.* He seems to have noted that Gorton did not have auditory or visual hallucinations. *Id.* He seems to have stated that work stress decreased her impulse control and her concentration. *Id.* For the section asking for recommended treatment and prognosis, Dr. McAdams wrote that either Gorton's "prognosis" or her "progress" (the handwriting is not clear as to which word was written) was poor, and the remainder of his comment is not legible. *Id.* He did not respond to a question regarding Gorton's ability to carry out instructions or respond to work pressure, supervision and co-workers. *Id.* The diagnosis appears to be major depressive disorder, and Dr. McAdams believed that Gorton could handle her own funds. *Id.*

Agency consultant Denise LaGrand, Psy. D., completed a mental status examination of Gorton on October 12, 2006. (R. 226-31). On examination, Dr. LaGrand found Gorton's memory and concentration to be adequate. (R. 229-30). Dr. LaGrand's Axis I diagnoses were generalized anxiety disorder and moderate major depression. (R. 230). Gorton's GAF was stated as 50. (R.

231). Dr. LaGrand's opinion was that Gorton's condition could improve with adequate treatment and appropriate medication. *Id.*

Carolyn Goodrich, Ph.D., a nonexamining agency consultant, completed a Psychiatric Review Technique form and a Mental Residual Functional Capacity Assessment on November 13, 2006. (R. 239-56). For Listing 12.04, Dr. Goodrich noted that Gorton had depressive syndrome, and for Listing 12.06, Dr. Goodrich noted Gorton's anxiety. (R. 246, 248). For the "Paragraph B Criteria,"[2] Dr. Goodrich assessed Gorton with a mild degree of limitation in her activities of daily living and a moderate degree of limitation in social functioning and in her concentration, persistence or pace. (R. 253). She noted no episodes of decompensation. *Id.* In the "Consultant's Notes" portion of the form, Dr. Goodrich summarized the treatment records from Laureate, including the release to return to work on May 8, 2006, the examination report of Dr. LaGrand, and Gorton's activities of daily living. (R. 255).

On the Mental Residual Functional Capacity Assessment, Dr. Goodrich assessed moderate limitations in Gorton's ability to understand, remember, and carry out detailed instructions and in her ability to interact appropriately with the general public. (R. 239-40). She found no other significant limitations. *Id.* In her conclusion, Dr. Goodrich stated that Gorton could perform simple and some complex tasks, could relate to others on a superficial work basis, and could adapt to a work situation. (R. 241).

---

[2]There are broad categories known as the "Paragraph B Criteria" of the Listing of Impairments used to assess the severity of a mental impairment. The four categories are (1) restriction of activities of daily living, (2) difficulties in maintaining social functioning, (3) difficulties in maintaining concentration, persistence or pace, and (4) repeated episodes of decompensation, each of extended duration. Social Security Ruling ("SSR") 96-8p; 20 C.F.R. Part 404 Subpt P, App. 1 ("Listings") §12.00C. *See also Carpenter v. Astrue*, 537 F.3d 1264, 1268-69 (10th Cir. 2008).

Gorton was seen for a physical consultative examination by Seth Nodine M.D. on March 14, 2007, but her chief complaint was her mental problems. (R. 262-69). On examination, Dr. Nodine noted Gorton's flat affect, but found her to be alert and oriented, with intact thought processes. (R. 263). Dr. Nodine's assessments were asthma, dyslipidemia, major depressive disorder, anxiety, post-traumatic stress disorder, and panic attacks. (R. 264).

A second Mental Status Form completed by Dr. McAdams apparently in March 2007 is more legible than the one completed apparently in October 2006. (R. 271). Dr. McAdams noted that Gorton had appropriate grooming, but had interpersonal difficulties that made her want to withdraw. *Id.* She was alert and oriented, and her thoughts were clear and goal-oriented. *Id.* He seemed to state that Gorton's prognosis was poor and that Gorton was functioning at her baseline. *Id.* Dr. McAdams stated that Gorton could remember and carry out simple instructions. *Id.* In response to whether Gorton could respond to work pressure, supervision and co-workers, Dr. McAdams appears to have written "difficulty interpersonally." *Id.* The diagnoses were major depressive disorder and generalized anxiety disorder. *Id.*

Dr. McAdams apparently completed a Mental Medical Source Statement in April 2007. (R. 274-77). On this form, Dr. McAdams checked boxes indicating that Gorton was severely limited in nine functional areas, and markedly limited in the remaining eleven areas. (R. 274-76). In a section for remarks, he wrote that Gorton's condition should be considered permanent and that it was being treated to maximum effect by medication. (R. 276). Dr. McAdams elaborated that Gorton's ability to be gainfully employed was severely limited and that he considered her to be permanently and totally disabled. (R. 277).

Dr. McAdams also wrote a "To Whom It May Concern" letter dated June 11, 2007. (R.

279). In this letter, Dr. McAdams stated that Gorton had marked difficulties with concentration, attention, and staying on task, she had low energy and poor motivation due to her depressive symptoms, and she was prone to stress-induced panic attacks. *Id.* He stated that it was "virtually impossible" for Gorton to attend school or to be gainfully employed and that Gorton should be considered permanently and totally disabled. *Id.*

## Procedural History

Gorton protectively filed an application on August 21, 2006 seeking disability insurance benefits under Title II, 42 U.S.C. §§ 401 *et seq.*, alleging disability beginning June 23, 2006. (R. 79-81). The application was denied initially and on reconsideration. (R. 49-52, 54-56). A hearing before ALJ Lantz McClain was held May 19, 2008 in Tulsa, Oklahoma. (R. 18-45). By decision dated August 7, 2008, the ALJ found that Gorton was not disabled at any time through the date of the decision. (R. 6-14). On March 24, 2009, the Appeals Council denied review of the ALJ's findings. (R. 1-3). Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 404.981.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §

404.1520.³  *See also Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) (detailing steps). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams*, 844 F.2d at 750.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*  The court's review is based on the record taken as a whole, and the court will "meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking 'into account whatever in the record fairly detracts from its weight.'" *Id., quoting Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). The court "may neither reweigh the evidence nor substitute" its discretion for that of the Commissioner. *Hamlin,* 365 F.3d

---

³Step One requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step Two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings"). A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to Step Four, where the claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account his age, education, work experience, and RFC, can perform. *See Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

at 1214 (quotation omitted).

### Decision of the Administrative Law Judge

The ALJ found that Gorton met insured status requirements through December 31, 2010. (R. 8). At Step One, the ALJ found that Gorton had not engaged in any substantial gainful activity since her alleged onset date of June 23, 2006. *Id.* At Step Two, the ALJ found that Gorton had severe impairments of asthma, degenerative disc disease, depression, and anxiety. *Id.* The ALJ discussed Gorton's testimony that she had dizziness as a side-effect from her medications, and he found that this impairment was non-severe. *Id.* He found that Gorton's claims of problems with her hands and swelling in her legs were not established through the medical evidence of record and were therefore medically nondeterminable. *Id.* At Step Three, the ALJ found that Gorton's impairments did not meet a Listing. (R. 9).

The ALJ determined that Gorton had the RFC to do medium work, but she needed to avoid concentrated exposure to dust and fumes. (R. 10). She was able to perform simple, repetitive tasks, and she was limited to incidental contact with the public. *Id.* At Step Four, the ALJ found that Gorton could not perform her past relevant work. (R. 13). At Step Five, the ALJ found that there were jobs that Gorton could perform, taking into account her age, education, work experience, and RFC. *Id.* Therefore, the ALJ found that Gorton was not disabled. (R. 14).

### Review

Gorton presents her arguments as errors in the ALJ's RFC determination. The undersigned finds that substantial evidence supports the ALJ's decision, and the decision complies with legal requirements. Therefore, the ALJ's decision is affirmed.

The principal thrust of Gorton's argument is that the ALJ's RFC determination did not take

into account the opinion evidence of Dr. McAdams, as well as the opinion evidence stated in the GAF assessments. Plaintiff's Opening Brief, Dkt. #14, pp. 8-11. Regarding opinion evidence, generally the opinion of a treating physician is given more weight than that of an examining consultant, and the opinion of a nonexamining consultant is given the least weight. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). A treating physician opinion must be given controlling weight if it is supported by "medically acceptable clinical and laboratory diagnostic techniques," and it is not inconsistent with other substantial evidence in the record. *Hamlin*, 365 F.3d at 1215. *See also* 20 C.F.R. § 404.1527(d)(2). Even if the opinion of a treating physician is not entitled to controlling weight, it is still entitled to deference and must be weighed using the appropriate factors set out in Section 404.1527. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).

In the present case, the ALJ summarized the opinion evidence of Dr. McAdams given in 2006 and 2007, and he stated that he gave that evidence "little weight." (R. 11-12). The undersigned finds that the ALJ gave adequate specific legitimate reasons for rejecting or discounting this treating physician evidence. *See White v. Barnhart*, 287 F.3d 903, 907-08 (10th Cir. 2001) (Tenth Circuit would not reweigh evidence when the ALJ's discounting of treating physician's opinion was based on legitimate factors such as lack of objective medical evidence supporting treating physician's opinion, inconsistencies in the treating physician's records, and the relatively brief length of the doctor-patient relationship); *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (no error where ALJ "provided good reasons in his decision for the weight he gave to the treating sources' opinions").

The most specific reason given by the ALJ was that Dr. McAdams released Gorton to return

to work with no restrictions in 2006, and the ALJ found that the medical records did not include any evidence that Gorton's condition significantly worsened after that event. (R. 12-13). This was a legitimate reason to discount or reject Dr. McAdams' opinion. In *Castellano v. Sec'y of Health and Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994), the Tenth Circuit approved of the ALJ's rejection of the treating physician opinion evidence when the physician had previously stated that the claimant could do some light or sedentary work, and then stated that the claimant was totally disabled, and the physician stated that the claimant's condition had not changed. *See also White*, 287 F.3d at 907-08 (ALJ's rejection of treating physician opinion was properly based partly on unexplained differences between two different assessments of the claimant). The opinion evidence of Dr. McAdams here was similar to the opinion evidence in both Castellano and White, because while Dr. McAdams apparently thought that Gorton was able to work in May 2006, by April 2007 his opinion was that she was "totally disabled." (R. 162-63, 277, 279). Thus, it was legitimate for the ALJ to use the unexplained differences between these opinions as one reason for rejecting or discounting the evidence of Dr. McAdams.

Other reasons given by the ALJ were legitimate, but they should have been more explicitly supported by the ALJ with references to evidence. The ALJ stated that "Dr. McAdams' opinions contrast sharply and are without substantial support from the other evidence of record." (R. 12). There is no citation to any of the evidence that the ALJ considered to "contrast sharply" with the opinion evidence of Dr. McAdams. By implication, however, the undersigned finds that the ALJ contrasted the opinion evidence of Dr. McAdams with the report of Dr. LaGrand. (R. 11-12). The ALJ noted that Dr. LaGrand's examination found that Gorton's ability to carry out instructions and her memory and concentration were adequate. (R. 11, 229-30). This evidence did, indeed, sharply

11

contrast with Dr. McAdams' opinions that Gorton's understanding and memory were markedly or severely limited. (R. 274). While it would have been preferable for the ALJ to explictly contrast the findings of Dr. LaGrand with the opinion evidence of Dr. McAdams, the undersigned finds that this evidence cited by the ALJ does in fact support his rejection or discounting of Dr. McAdams' opinions. *See, e.g., Cobb v. Astrue*, 364 Fed. Appx. 445, 450 (10th Cir. 2010) (unpublished) (while ALJ's credibility assessment was summary, taking the decision as a whole the ALJ's findings regarding the claimant's testimony were "clear enough" and did not violate rule against *post hoc* justification).

The ALJ's last reason[4] for discounting Dr. McAdams' opinions was that they were in conflict and inconsistent with Dr. McAdams' own treatment records. (R. 12). This again is a legitimate reason, but the ALJ should have given specific examples to support this reasoning. The only specific evidence referenced by the ALJ was the same as his principal reason for discounting Dr. McAdams'

---

[4]The undersigned finds that the ALJ's discussion of the meaning of "disability" was not relevant to the analysis of Dr. McAdams' opinion evidence. It can be legitimate to discount a treating physician opinion when there is a difference in meaning of terms, such as the meaning of "disability" in the context of workers compensation. *See, e.g., Seever v. Barnhart*, 188 Fed. Appx. 747, 753 (10th Cir. 2006) (unpublished); *Jones v. Barnhart*, 53 Fed. Appx. 45, 47 (10th Cir. 2002) (unpublished). Here, however, Dr. McAdams did not give only opinions that Gorton was "disabled." Instead, he checked boxes indicating his opinion of the degree of Gorton's impairment regarding specific functions, such as Gorton's ability to remember work procedures. (R. 274). The categories of degree of impairment were defined on the form. (R. 274-77). Given the nature of the opinions given by Dr. McAdams, his familiarity with the Social Security definition of "disability" was not particularly relevant, and this factor did not justify rejection of his opinions. This boilerplate provision adds nothing of substance to the ALJ's decision. *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004) (boilerplate statements "[fail] to inform us in a meaningful, reviewable way of the specific evidence the ALJ considered"). The inclusion of improper boilerplate language does not require reversal, however, when the ALJ's analysis was not limited to boilerplate provisions, and he provided sufficient explanation with specific evidence to explain the weight he gave to treating physician opinion evidence. *Russell v. Astrue*, 365 Fed. Appx. 199, 203-04 (10th Cir. 2009) (unpublished).

opinion: that Dr. McAdams had previously released Gorton to return to work with no restrictions. Except for its repetition of the first justification, the level of specificity for this third reason for discounting Dr. McAdams' opinion evidence does not allow for meaningful review. *See Langley*, 373 F.3d at 1122-23 (ALJ's rejection of treating physician opinion because it was not supported by his "own records" was not "sufficiently specific to enable [the court] to meaningfully review his findings"); *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003).

Although the ALJ did not provide adequate support for his third reason, the undersigned is able to sustain the ALJ's analysis regarding Dr. McAdams' opinion evidence due to the specific and legitimate point that Dr. McAdams had previously released Gorton to return to work without restrictions and because the ALJ cited to portions of the report of Dr. LaGrand that sharply contrasted with the opinion evidence of Dr. McAdams. The related arguments of Gorton that the GAF evidence requires reversal are not persuasive. The ALJ rightly cited that portion of Dr. LaGrand's report in which she assessed Gorton's GAF as 50. The possibility that a GAF of 50 could have been found to be consistent with a level of impairment greater than that found by the ALJ in his RFC determination, or that the GAF score was consistent with the opinion evidence of Dr. McAdams does not mean that the ALJ's findings regarding Dr. McAdams' opinion evidence and Gorton's RFC lack support. *See Boucher v. Astrue*, 2010 WL 1258251 (10th Cir.) (unpublished) (ALJ's finding that mental limitations were mild was supported by substantial evidence even though claimant had a GAF of 55); *Camp v. Barnhart*, 103 Fed. Appx. 352 (10th Cir. 2004) (unpublished) (GAF score of 50 did not establish that claimant's mental impairments were severe).

Finally, the ALJ specifically cited to the opinion of Dr. Goodrich in support of his RFC determination. (R. 12). The ALJ was entitled to consider the opinion evidence of the nonexamining

consultants. *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007); *Weaver v. Astrue*, 353 Fed. Appx. 151, 154-55 (10th Cir. 2009) (unpublished). Gorton's arguments regarding the ALJ's RFC determination constitute "an invitation to this court to engage in an impermissible reweighing of the evidence and to substitute our judgment for that of the Commissioner," and the undersigned declines that invitation. *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005). The ALJ's RFC determination is supported by substantial evidence and is in compliance with legal requirements.

A lesser argument of Gorton is that the ALJ omitted to consider Gorton's dizziness in making his RFC determination. While Gorton does not appear to be contesting the ALJ's finding that dizziness was a non-severe impairment at Step Two, Gorton's argument is that the dizziness nevertheless should have been included in the RFC determination. It is true that non-severe impairments must be taken into account in assessing a claimant's RFC. *Mushero v. Astrue*, 2010 WL 2530728 *2 (10th Cir.), *citing* 20 C.F.R. §§ 404.1545(a)(2) and 416.945(a)(2). The ALJ here specifically discussed Gorton's claim of dizziness and found that it would have no more than a minimal effect on her ability to work. (R. 8). The ALJ's RFC determination took into account the evidence regarding Gorton's impairments, and it is evident that the ALJ did not find the non-severe impairment of dizziness to require a specific limitation, such as the one Gorton suggests, that Gorton should have been restricted from working around fast-moving machinery. Given the ALJ's finding that Gorton's dizziness was non-severe, it was not reversible error for the ALJ to fail to incorporate a specific RFC finding for this non-severe impairment. *See Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) (practice of court is to take the ALJ at his word when he states that he has considered all of the evidence).

Finally, Gorton states that the ALJ improperly interjected his own lay opinion in making his

RFC determination. Plaintiff's Opening Brief, Dkt. #14, p. 12. As the undersigned has reviewed, the RFC determination was supported by substantial evidence, and the ALJ adequately explained his reasons for discounting the opinion evidence of Dr. McAdams. This last argument of Gorton, regarding the ALJ's improper interjection of lay opinion, is not a developed argument that this Court can review in a meaningful way. *See Wall v. Astrue*, 361 F.3d 1048, 1066 (10th Cir. 2009) (perfunctory presentation of argument by claimant deprived the district court of the opportunity to analyze and rule on issue); *Zumwalt*, 220 Fed. Appx. at 776-77 (waiver rules apply in Social Security disability context when issues are not sufficiently preserved).

All of Gorton's arguments essentially are that Gorton would like for this Court to give more weight to the evidence that is in her favor and less weight to the evidence that disfavors her claim of disability.

> The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*.

*Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citations, quotations, and brackets omitted).

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. The decision is **AFFIRMED**.

Dated this 11th day of August, 2010.

_____
Paul J. Cleary
United States Magistrate Judge